UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STATE FARM MUTUAL INSURANCE COMPANY,

                   **OPINION & ORDER**

      Plaintiff,

                   24-CV-4369
  v.                 (Marutollo, M.J.)

DANIEL RICCIARDI and MARGARET RICCIARDI,

      Defendants.
------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

  Margaret Ricciardi ("Margaret") alleges that she was negligently struck by a motor vehicle operated by her husband Daniel Ricciardi ("Daniel"), causing her severe injuries. *See* Dkt. Nos. 1, 26. Margaret subsequently commenced a lawsuit against Daniel in New York State Supreme Court, Kings County. *See id.*

  Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") brings this declaratory judgment action against Margaret and Daniel (collectively "Defendants"). *See generally* Dkt. No. 1. In short, State Farm seeks an order declaring that State Farm has no coverage obligated to its insured, Daniel, in connection with Margaret's lawsuit against Daniel. *Id.* State Farm argues that it has no duty to defend or indemnify Daniel in the underlying state court lawsuit and that its appointed counsel may withdraw immediately as counsel to Daniel in that action. *See id.*

  Presently before the Court are Defendants' respective motions to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)*, see* Dkt. Nos. 21, 23-24, 26, as well as State Farm's cross-motion for judgment on the pleadings pursuant to Rule 12(c). Dkt. Nos. 27, 29. As discussed further below, the Court **grants** State Farm's motion and **denies** Defendants' motion.

I.      **Background**

    A.      **New York Insurance Law Section 3420(g)**

From January 1, 2020 until July 31, 2023, Section 3420(g) of New York's Insurance Law provided that "[n]o policy or contract shall be deemed to insure against any liability of an insured because of . . . injuries to his or her spouse . . . unless express provision relating specifically thereto is included in the policy as provided in paragraphs one and two of this subsection." N.Y. Ins. Law § 3420(g) (2020). The law further articulated that the "exclusion shall apply only where the injured spouse, to be entitled to recover, must prove the culpable conduct of the insured spouse." *Id.*

Paragraph one of the 2020 version of Section 3420(g) stated:

> *Upon written request of an insured*, and upon payment of a reasonable premium established in accordance with article twenty-three of this chapter, an insurer issuing or delivering any policy that satisfies the requirements of article six of the vehicle and traffic law shall provide coverage against liability of an insured because of death of or injuries to his or her spouse up to the liability insurance limits provided under such policy even where the injured spouse, to be entitled to recover, must prove the culpable conduct of the insured spouse.

N.Y. Ins. Law § 3420(g)(1) (2020) (emphasis added). The provision defined the insurance coverage addressed by paragraph one as "supplemental spousal liability insurance" ("SSL insurance"). *Id.* Paragraph two of the section further expounded upon the exclusion referenced in Section 3420(g), explaining in that:

> Upon issuance of a motor vehicle liability policy that satisfies the requirements of article six of the vehicle and traffic law and that becomes effective on or after January first, two thousand three, pursuant to regulations promulgated by the superintendent, the insurer shall notify the insured, in writing, of the availability of supplemental spousal liability insurance. Such notification shall be contained on the front of the premium notice in boldface type and include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage. Subsequently, a notification of the availability of supplementary spousal liability coverage shall be provided at least once a year in motor vehicle liability policies issued pursuant to article six of the

vehicle and traffic law, including those originally issued prior to January first, two thousand three. Such notice must include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage.

N.Y. Ins. Law § 3420(g)(2) (2020).

Pursuant to amendments approved by the New York State Legislature, a new version of Section 3420(g) went into effect on August 1, 2023. 2022 N.Y. Sess. Laws Ch. 735 (A. 1029) (McKinney). Mirroring Section 3420(g) of the 2020 version, the new Section 3420(g)(1) provided that "[e]xcept as otherwise provided in paragraph two of this subsection, no policy or contract shall be deemed to insure against any liability of an insured because of . . . injuries to his or her spouse . . . unless express provision relation specifically thereto is included in the policy." N.Y. Ins. Law § 3420(g)(1) (2023).

In contrast to an insured's requirement to expressly opt-in to SSL insurance under the 2020 statute, however, the August 1, 2023 version of Section 3420(g) mandated that applicable insurers provide SSL insurance unless otherwise expressly declined by the insured:

> Every insurer issuing or delivering any policy that satisfies the requirements of article six of the vehicle and traffic law *shall provide coverage in such policy against liability of an insured because of death of or injuries to his or her spouse* up to the liability insurance limits provided under such policy even where the injured spouse, to be entitled to recover, must prove the culpable conduct of the insured spouse, *unless the insured elects, in writing and in such form as the superintendent determines, to decline and refuse such coverage* in his or her policy.

N.Y. Ins. Law § 3420(g)(2)(A) (2023) (emphasis added). Subsection (2)(B) further explained in pertinent part that "[u]pon issuance, renewal or amendment of a motor vehicle policy . . . the insurer shall notify the insured, in writing, that *such policy shall include* [SSL insurance] *unless*

3

*the insured declines and refuses such insurance*, in writing[.]" N.Y. Ins. Law § 3420(g)(2)(B) (2023) (emphasis added).[1]

The implementing regulation for Section 3420(g), which is N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.6, further addressed SSL insurance and provided at the time:[2]

> If a named insured elects, in writing, and in such form as the superintendent determines, to decline and refuse SSL insurance, the policy will not include SSL insurance. An insurer shall not be required to obtain a written declination at each renewal or amendment of the policy if a named insured previously submitted a written declination of SSL insurance.

N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.6(a)(3) (June 20, 2023).

### B.    Factual Background

#### i.    The Original and Amended Policies

State Farm is an insurance company incorporated in Illinois, where it also has its principal place of business. Dkt. No. 1 at ¶ 2. According to the Complaint, "[a]t all relevant times, State Farm was authorized to issue and sell insurance policies in the State of New York." *Id.* Daniel and Margaret, both citizens of New York, are married and live in Brooklyn, New York. *Id.* at ¶¶ 3-4.

In 2023, State Farm issued Daniel an insurance policy, Policy No. 361 1173-C23-52, covering "a 2023 BMW with Vehicle Identification Number 5UXCR6C08P9R78817" (the "Original Policy"). *Id.* at ¶¶ 7, 14; *see* Dkt. No. 28 at 4 (containing declaration for Original Policy). The Original Policy, in effect from September 20, 2024 to March 23, 2024, "provided, among

---

[1] At the time of publication, Section 3420(g) retains the mandate that applicable insurers provide SSL insurance unless otherwise declined. N.Y. Ins. Law § 3420(g)(2)(i)-(ii) (2025).

[2] Section 60-16 of Title 11 of the NYCRR has been amended multiple times since the period relevant to this action, including on September 15, 2023, and again on October 4, 2023. Those amendment, however, included no substantive changes to the relevant portion of the regulation's text. *Compare* N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.6(a)(3) (June 20, 2023), *with* N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.6(a)(3) (Sept. 15, 2023), N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.6(a)(3) (Oct. 4, 2023).

other coverages, automobile liability coverage for bodily injury in the amount of $250,000 each person and $500,000 each accident." *Id.* at ¶ 7; *see also* Dkt. No. 1-1 (containing copy of the policy). Under the "Exclusions" subsection of the Original Policy's section titled "Liability Coverage," the following language is included:

> THERE IS NO COVERAGE FOR AN ***INSURED***[3] FOR ***BODILY INJURY***[4] TO THAT INSURED'S SPOUSE, OR FOR DAMAGE TO PROPERTY OF THAT ***INSURED'S*** SPOUSE. THIS EXCLUSION SHALL APPLY ONLY WHERE THE INJURED SPOUSE, TO BE ENTITLED TO RECOVER, MUST PROVE THE CULPABLE CONDUCT OF THE ***INSURED.***

Dkt. No. 1-1 at 36 (emphasis in original).[5]

On June 26, 2023, Daniel "elected, in writing, in such form as the superintendent determined, to *decline and refuse* [SSL insurance]." Dkt. No. 1 at ¶ 12 (emphasis added); *see also* Dkt. No. 1-2 (exhibiting that Daniel "hereby decline[d] supplemental spousal liability insurance" by signing the declination document on June 26, 2023).

Thereafter, the vehicle covered by the Original Policy "was totaled in an accident." Dkt. No. 1 at ¶ 14.

The Complaint represents that the Original Policy issued by State Farm to Daniel "was amended to cover a 2024 BMW [vehicle] ['the 2024 BMW'] with Vehicle Identification Number 5UX23EU09R9T95262" (the "Amended Policy"). *Id.* at ¶ 15. The policy number for the

---

[3] The Original Policy defines "Insured" as, in pertinent part: (I) "you and resident relatives for: (a) the ownership, maintenance, or use of: (1) your car; (2) a newly acquired car . . . and (b) the maintenance or use of (1) a non-owner car; or (2) a temporary substitute car"; and (II) "the first person shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a car that is owned by, or furnished or available for the regular use of, a person who resides primarily in your household, but only if such car is neither owned by, nor furnished or available for the regular use of, the first person shown as a named insured on the Declarations Page or that person's spouse[.]" Dkt. No. 1-1 at 7.

[4] "Bodily Injury" is defined as "bodily injury to a person and sickness, disease, or death that results from it." Dkt. No. 1-1 at 4.

[5] Page citations are to the ECF-stamped page numbers.

5

Amended Policy was Policy No. 361 1173-C23-52A. *Id.* at ¶ 7; Dkt. No. 22 at 7 (containing declaration page for the Amended Policy).

### ii. The Underlying State Action

On October 8, 2023, Daniel allegedly operated the 2024 BMW covered by the Amended Policy. Dkt. No. 1 at ¶ 19. As Margaret was standing outside of a municipal building, the BMW allegedly "came into contact with Margaret, causing her to suffer severe and serious personal injuries to her mind and body" and resulted in "great physical pain and mental anguish." *Id.* at ¶¶ 20-21; *see also* Dkt. No. 1-3 at ¶¶ 3, 12-13 (containing state court complaint).

On April 29, 2024, Margaret initiated suit against Daniel in New York Supreme Court, Kings County (the "State Action"). Dkt. No. 1 at ¶ 18; *see generally* Dkt. No. 1-3. The State Action seeks damages for bodily injuries allegedly suffered by Margaret as a result of Daniel's claimed negligence. Dkt. No. 1 at ¶¶ 22-23; Dkt. No. 1-3 at ¶¶ 13-15.

State Farm represents that it retained, "under a full reservation of rights," a law firm, the Scahill Law Group, to represent Daniel in the State Action. Dkt. No. 1 at ¶ 24. State Farm maintains that it did so "[a]s an accommodation to Daniel," and that the firm would be involved "until such time as all issues regarding insurance coverage for the [State Action] could be resolved." *Id.*

### C. Procedural Background

On June 20, 2025, State Farm filed the instant action. Dkt. No. 1. The Complaint alleges that by declining SSL Insurance for the Original Policy issued to the 2023 BMW—extended to cover the 2024 BMW under the Amended Policy—State Farm is not obligated to cover any damages stemming from the State Action. *Id.* at ¶¶ 26-33. State Farm seeks a judgment from the Court, pursuant to 28 U.S.C. § 2201, declaring that State Farm has no duty to defend or indemnify

6

Daniel in the State Action, and that the Scahill Law Group may withdraw as counsel in the State Action. Dkt. No. 1 at 6.

On August 6, 2024, the parties consented to jurisdiction before the undersigned United States Magistrate Judge to conduct all proceedings and to order the entry of final judgment. Dkt. Nos. 13-14.

On August 9, 2024, the Court held an initial conference with the parties. Minute Entry dated Aug. 9, 2024. After the parties "expressed that they wished to engage in motion practice to address a dispositive issue law in the case," the Court converted the conference into a pre-motion conference and stayed discovery. *Id.* The Court further set a briefing deadline for the parties' anticipated motions, ordering that the parties file all fully-briefed motions on November 21, 2024. *Id.*

### D. Defendants' Motions to Dismiss

On November 21, 2024, Defendants filed their motions to dismiss. *See* Dkt. Nos. 21-26.[6] Defendants request that State Farm's action be dismissed under Federal Rule of Civil Procedure 12(b)(6) because the August 1, 2023 amendment to Section 3420(g)—taking effect after Daniel declined SSL insurance for the 2023 BMW in relation to the Original Policy—mandates that all policies issued by State Farm after August 1, 2023 include SSL insurance, unless expressly declined.[7] Dkt. No. 23 at 10. Thus, Defendant's contend that the Amended Policy, issued after the statutory amendment to Section 3420(g) took effect, includes SSL insurance, regardless of any

---

[6] Although Daniel and Margaret filed individual motions to dismiss, *see* Dkt. Nos. 21, 24, Margaret represents that she "adopts and incorporates" Daniel's legal arguments as set forth in his brief in support of his motion. Dkt. No. 26 at 3. Although the Court has carefully reviewed and evaluated both motions, the Court will, in the interests of clarity, cite largely to Daniel's motion when discussing his arguments in support of the collective request to dismiss.

[7] The parties do not dispute the applicability of N.Y. Ins. Law § 3420(g) to the Original and Amended Policies.

7

action taken by Daniel. *Id.* Defendants additionally contend that even if the June 2023 declination form applied to the Amended Policy covering the 2024 BMW, "State Farm failed to provide the requisite [SSL insurance] notice with that policy and was therefore prohibited from omitting [SSL insurance] coverage therein." *Id.* at 14.

### E.  State Farm's Cross-Motion

In response to the motions to dismiss, State Farm cross-moved for judgment on the pleadings pursuant to Rule 12(c). Dkt. Nos. 27-29. State Farm asserts that the Original and Amended Policies exclude SSL insurance due to Daniel's express written declination of the coverage in June of 2023, which "remained valid even after the policy was amended." Dkt. No. 29 at 13. Thus, State Farm contends that based on the pleadings before the Court, the declaratory relief it requests in its Complaint should be granted. *Id.* at 22. State Farm further contends that the motions to dismiss should be denied, as the arguments they raise are without merit. *Id.* at 14-21.

## II.  Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(6)

"To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff; however, the Court need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials.  Generally, we do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)); *see, e.g., Weller v. Icahn Sch. of Med. at Mount Sinai*, No. 23-CV-4775 (PKC) (LB), 2025 WL 745992, at *1 (E.D.N.Y. Mar. 7, 2025); (evaluating a motion to dismiss based on facts derived from an amended complaint "as well as Plaintiff's Employment Contract [], which is attached as Exhibit A to Plaintiff's original Complaint[.]"); *RH New Orleans Holdings LLC v. Serene Investment Management* LLC, No. 24-CV-6331 (JSR), 2025 WL 1095028, *2 (S.D.N.Y. Apr. 11, 2025) ("Here, the 'Bridge Term Sheet' is clearly referenced in the amended complaint and integral to RH New Orleans's claims, which include a claim for breach of contract and otherwise suggest that this document reflected the parties' agreement.").

9

"For insurance disputes in particular, courts may consider the insurance policies themselves, even if they are not attached to the plaintiff's complaint." *Napoli v. Nat'l Sur. Corp.*, No. 21-CV-9279 (JSR) (RWL), 2022 WL 1943776, at *4 (S.D.N.Y. May 19, 2022), *report and recommendation adopted*, 2022 WL 2110606 (S.D.N.Y. June 10, 2022), *aff'd*, No. 22-1516, 2023 WL 2320332 (2d Cir. Mar. 2, 2023) (citations omitted).

B.      **Federal Rule of Civil Procedure 12(c)**

"'The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim.'" *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). "To survive a motion for judgment on the pleadings, a pleading 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Pizza on 23rd Corp v. Liberty Mut. Ins. Co.*, 723 F. Supp. 3d 307, 311 (S.D.N.Y. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))

"In deciding the motion, a court can 'rely on the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *Hartford Fire Ins. Co. v. W. Union Co.*, 630 F. Supp. 3d 431, 434 (S.D.N.Y. 2022) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal and citations omitted); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

Thus, "[j]udgment on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'"

*Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021) (quoting *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 339 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 507 (2d Cir. 2009)); *Lively*, 6 F.4th at 302 ("a court may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations"). "A motion for judgment on the pleadings is to be granted 'only where, on the facts admitted by the non-moving party, the moving party is clearly entitled to judgment.'" *Pizza on 23rd Corp*, 723 F. Supp. 3d at 311 (quoting *Transamerica Fin. Life Ins. Co. v. Session*, 10-CV-1328 (HB), 2010 WL 4273294, at *2 (S.D.N.Y. Oct. 28, 2010)).

    C.    **Declaratory Judgment**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any United States Court, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This Court has discretion in evaluating whether a grant of declaratory relief is warranted under the circumstances. *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 626 (E.D.N.Y. 2018) (quoting *Lijoi v. Cont'l Cas. Co.*, 414 F. Supp. 2d 228, 247 (E.D.N.Y. 2006)).

The Court of Appeals for the Second Circuit has instructed that granting a declaratory judgment rests on "(1) whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether [such] a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the

domain of a state or foreign court; (5) whether there is a better or more effective remedy." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023); *YCF Trading Inc. v. Skullcandy, Inc.*, No. 24-CV-02540 (MKB), 2025 WL 929714, at *21 (E.D.N.Y. Mar. 27, 2025).

### III. Discussion

#### A. The Amended Policy Was A Renewal of the Original Policy

As a general rule, "contracts are interpreted in accordance with the law in effect at the time of their formation." *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 159 (2d Cir. 2003) (citing *Bloomfield v. Bloomfield*, 97 N.Y.2d 188, 194 (N.Y. 2001)). The repeal or partial repeal of a statute "has no impact upon contractual rights that were established while the statute was in force" under the presumption against retroactivity. *Id.* (citing N.Y. Gen. Constr. Law § 93); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 93 (2d Cir. 2006) ("a presumption against retroactivity applies when new [statutory] provisions affect contractual or property rights"); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270-71 (1994) ("The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance").

Although the presumption against retroactivity is not absolute, it applies "when 'the new provision attaches new legal consequences to events completed before its enactment,' *i.e.,* when it 'impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed.'" *Ahmad v. Morgan Stanley & Co.*, 2 F. Supp. 3d 491, 496 (S.D.N.Y. 2014) (quoting *Landgraf*, 511 U.S. at 270, 280). Moreover, "'it has been held that statutory modifications of a standard insurance policy are, generally, not to be applied retroactively to policies already in force on the effective date of the

12

statutory amendments.'"  *Maryland Cas. Co.*, 332 F.3d at 159 (quoting *Char–Mo Investors, Inc. v. Market Ins. Co.*, 44 N.Y.2d 793, 794-95 (N.Y. 1978)).  Similarly, "[legislative] enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."  *Surgicore Surgical Ctr., LLC v. Liberty Mut. Ins. Co.*, No. 23-CV-7462 (MKB), 2024 WL 3835149, at *4 (E.D.N.Y. Aug. 15, 2024) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208-09 (1988)).

Here, it is undisputed that the Original Policy was issued prior to the amendment to Section 3420(g).  Similarly, it is undisputed that the Amended Policy was issued after the amendment to Section 3420(g).  Therefore, the crux of this issue is whether the Amended Policy is a renewal to or amendment of the Original Policy, or whether the Amended Policy is an entirely new policy and agreement between the parties in determining whether Daniel had SSL insurance when the underlying incident giving rise to the State Action occurred.  In short, the Court finds that the Amended Policy is an amendment to the Original Policy.

The pleadings illustrate that the Amended Policy, covering the 2024 BMW involved in the accident with Margaret, was a renewal of the Original Policy covering the 2023 BMW.  *See* Dkt. Nos. 1-1, 1-2, 22 at 7, Dkt. No. 28 at 4.  The Complaint does not reveal, nor do the parties contest, that there were any substantive changes to the coverage and protections provided under the Original Policy and the Amended Policy.  An inspection of the declaration pages for the policies, both issued to "Daniel D. Ricciardi," shows that the coverages and limits under the policies are identical.  *Compare* Dkt. No. 22 at 7, *with* Dkt. No. 28 at 4.[8]  The policy numbers for the Original

---

[8] As explained above, the Court may rely on exhibits appended to the Complaint, materials incorporated by reference, and "documents that, although not incorporated by reference, are 'integral' to the complaint" when ruling on a motion made under Rule 12(c).  *L-7 Designs*, 647 F.3d at 422.  Here, copies of the declaration pages for both policies (*see* Dkt. Nos. 22 and 28) are not only referenced in the copy of the Amended Policy (*see, e.g.*, Dkt. No. 1-1 at 1) but are also critical in evaluating the instant suit.  *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 546 (S.D.N.Y. 2021) ("A document is

Policy—Policy No. 361 1173-C23-52—and the Amended Policy—Policy No. 361 1173-C23-52A—are identical save for the letter "A" affixed to the end of the Amended Policy's number. *See* Dkt. No. 1 at ¶ 7; Dkt. No. 1-2.

Further, the subsection titled "Important Messages" in the Amended Policy declarations page conveys the amount owed by Daniel for the "total *renewal* premium for [September 23, 2023 to March 23, 2024]" (Dkt. No. 22 at 8 (emphasis added)), as well as language clarifying that the total premium "reflect a recent change to your policy and the 6 month *renewal* premium." *Id.* (emphasis added). Additional language under the "Exceptions, Policy Booklet & Endorsements" subsection of the same declaration page exhibits application of three "*Amendatory* Endorsements" to the Amended Policy as well. *Id.* (emphasis added). The pleadings, as well as the declaration page for the Amended Policy—integral to State Farm's instant claims—thus suggest that the Amended Policy is a renewal of the Original Policy. *See, e.g.*, *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98-99 (2d Cir. 2012) ("Under New York law, insurance policies are interpreted according to general rules of contract interpretation. . . . [T]he words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions" (quotations and citations omitted)).

The finding that the Amended Policy is a renewal of the Original Policy is bolstered by the Court's decision in *Osuna v. Government Employees Insurance Company*. *See generally* No. 11-CV-3631 (JFB) (AKT), 2014 WL 1515563 (E.D.N.Y. Apr. 17, 2014) (Bianco, J.), *aff'd*, 623 F. App'x 3 (2d Cir. 2015). In that case, the Court granted the defendant-insurance company's motion for summary judgment in a suit brought by the plaintiff, who asserted that the defendant had a duty

---

'integral' if the complaint 'relies heavily on its terms and effect.'") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (cleaned up)); *L-7 Designs*, 647 F.3d at 422 (collecting cases where exhibits were integral to complaint).

to indemnify the plaintiff under SSL insurance in the underlying suit brought by the plaintiff's wife for damages she sustained in accident involving the plaintiff. *Id.* at *1, *10.[9] In granting the defendant's motion, the Court construed the relevant insurance policy to be originally issued in 1999, which ultimately affected the notice requirements concerning SSL insurance offered by the defendant. *Id.* at *9. The Court explicitly stated that "the fact that the renewal policy added a new vehicle does not change the fact that the policy itself was still 'originally issued' prior to" the date affecting the notice procedures for SSL insurance. *Id.* at *9 n.4. In other words, that the plaintiff added a new vehicle to his insurance policy did not change or supersede the date that the initial policy was issued for purposes of construing Section 3420(g). *Id.* The United States Court of Appeals for the Second Circuit affirmed the district court's ruling, finding that the operative date for the issuance of the policy under Section 3420(g) was when it was "originally issued" rather than any date of renewal. *Osuna*, 623 F. App'x at 6-7.

Accordingly, the Amended Policy was a renewal of the Original Policy under Section 3420(g). Therefore, the version of the statute that was in effect at the time the Original Policy controls construction of the extent of Daniel's insurance coverage. Under the pre-August 1, 2023 amendment of Section 3420(g), Daniel was therefore not automatically enrolled in SSL insurance

---

[9] "It is within a district court's discretion to convert a motion to dismiss or a motion for judgment on the pleadings to a motion for summary judgment when the parties have presented matters outside the pleadings, provided that the parties are given reasonable notice and an opportunity to present pertinent material before such a motion is converted." *Charles v. Cnty. of Nassau*, 116 F. Supp. 3d 107, 117 (E.D.N.Y. 2015) (citing *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999)). No party has sought discovery here. *See* Text Order, dated August 9, 2024. Because no discovery has been conducted in the instant matter, and because the parties rely on the pleadings and those documents integral to the complaint, the Court declines to convert the instant motions to those for summary judgment. *See Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 491 (S.D.N.Y. 2013) (declining to convert Rule 12(c) motion into a Rule 56 motion due to the lack of discovery); *see also Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discover."); *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings").

when State Farm issued the Original Policy.  N.Y. Ins. Law § 3420(g)(1) (2020).

### B.     Daniel Opted-Out of SSL Insurance Coverage

Defendants contend that even if the Amended Policy was a renewal of the Original Policy, the notice provided by State Farm as to the availability of SSL insurance coverage was defective and lacked the necessary elements under Section 3420(g), thus rendering Daniel's declination ineffective.  Dkt. No. 23 at 14-16.  State Farm counters that the notice that the notice and declination were procedurally proper.  Dkt. No. 29 at 17-21.

#### i.     The Notice and Declination Complied with Section 3420(g)

The 2020 version of Section 3420(g) required State Farm to notify Daniel in writing of the availability of SSL insurance for the Original Policy.  *See* N.Y. Ins. Law § 3420(g)(2).  The statute requires that "[s]uch notification shall be contained on the front of the premium notice in boldface type and include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage."  *Id.*  The notification of the availability of SSL insurance must also be provided "at least once a year in motor vehicle liability policies issued pursuant to article six of the vehicle and traffic law, including those originally issued prior to January first, two thousand three."  *Id.*  "Such notice must include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage."  *Id.*

Here, State Farm adhered to the requirements of Section 3420(g) when notifying Daniel to the availability of SSL insurance coverage.  The declaration page for the Original Policy shows that on the front of the SSL insurance premium notice, in bold face font, that upon written request, State Farm will "provide Supplemental Spousal Liability Insurance Coverage."  Dkt. No. 28 at 8.  The notice further explains that SSL insurance "provides bodily injury liability coverage under a

16

motor vehicle insurance policy to cover the liability an insured spouse because of the death of or injury to his or her spouse, even where the injured spouse must prove the culpable conduct of the insured spouse." *Id.*  The notice then provides an example of application of SSL insurance. *Id.* Finally, the notice indicates that "[t]he additional semi-annual premium for SSL [insurance] coverage is $14.60." *Id.*  Therefore, the SSL insurance notice provided to Daniel for the Original Policy was in compliance with the applicable version of Section 3420(g).  *See* N.Y. Ins. Law § 3420(g)(2) ("Such notification shall be contained on the front of the premium notice in boldface type and include a concise statement that supplementary spousal coverage is available, an explanation of such coverage, and the insurer's premium for such coverage").

The notification of SSL insurance for the Amended Policy similarly advises the insured of the availability of the coverage and provides—in bold face font on the first page of the premium notice—an explanation of SSL insurance.  Dkt. No. 22 at 8.  The notice in the Amended Policy, however, fails to include information concerning State Farm's premium for SSL insurance, as required by Section 3420(g)(2).  Rather, the notice advises Daniel that he previously had "declined [SSL insurance] coverage and it will not be included in [his] policy or on any future issuances, renewals or amendments of the policy until [he] notifies [State Farm] by contacting [his] agent that [he] wish[es] to purchase [SSL insurance]." *Id.*

Although the notice failed to advise Daniel as to the specific premium information for SSL insurance, it does not follow that the Court should simply rewrite the Original Policy to include SSL insurance coverage.  Rather, "balancing the equities is the most appropriate approach to evaluate policies that fail to conform to regulatory requirements."  *See In re Sept. 11th Liab. Ins. Coverage Cases*, 333 F. Supp. 2d 111, 128 (S.D.N.Y. 2004); *In re Ambassador Grp., Inc. Litig.*, 738 F. Supp. 57, 65 (E.D.N.Y. 1990) (same).

Ultimately, inclusion of SSL insurance to the Amended Policy would impose an obligation on State Farm that Daniel never purchased, but also one that he expressly rejected in writing. Dkt. No. 1-2; *see In re Sept. 11th Liab. Ins. Coverage Cases*, 458 F. Supp. 2d 104, 119 (S.D.N.Y. 2006) (declining to rewrite policy to include coverage to which the parties never bargained). A finding that the policies contain SSL insurance would thus undermine the central tenet of contract interpretation that "the intention of the parties should control." *See In re Sept. 11th Ins. Coverage Cases*, 458 F. Supp. 2d at 119; *see also MassMutual Asset Fin. LLC v. ACBL River Operations, LLC*, 220 F. Supp. 3d 450, 454 (S.D.N.Y. 2016) ("A court's primary objective in interpreting a contract is to 'give effect to the intent of the parties'" (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000))).

The Court therefore declines to reconstruct the terms of the policies issued by State Farm to Daniel to include SSL insurance when he had previously declined such insurance and never purchased a premium for the coverage.

### ii.     The Notice and Declination Complied with Statutory Regulations

Finally, State Farm complied with regulatory requirements in not seeking an additional declination of SSL insurance when issuing the Amended Policy. Under the relevant version of the implementing regulation for Section 3420(g), "[i]f a named insured elects, in writing, and in such form as the superintendent determines, to decline and refuse SSL insurance, the policy will not include SSL insurance." N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.6(a)(3) (June 20, 2023). Additionally, "[a]n insurer shall not be required to obtain a written declination at each renewal or amendment of the policy if a named insured previously submitted a written declination of SSL insurance." *Id.*

18

Here, Daniel signed a written declination form for SSL insurance coverage in the Original Policy on June 26, 2023.[10] *See* Dkt. No. 1-2.  As explained above, the Amended Policy was a renewal of the Original Policy.  Pursuant to Section 60-1.6(a)(3), State Farm therefore was not required to obtain a declination of SSL insurance by Daniel for the Amended Policy in light of the June 26, 2023 written declination of the coverage for the Original Policy.  Dkt. No. 1-2; *see* N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.6(a)(3) (June 20, 2023).

In sum, Daniel validly opted-out of SSL insurance coverage in the Original and Amended Policies with State Farm. Dkt. No. 1-2; *see also* N.Y. Ins. Law § 3420(g)(1) (2020).  Daniel's coverage provided by State Farm therefore does not include SSL insurance, and State Farm has no obligation to indemnify or otherwise defend Daniel in the underlying State Action.  State Farm is entitled to judgment on the pleadings.

Because the discussion above addresses the arguments raised in Defendants' briefs, Defendants' motions to dismiss are denied.

## IV.   Conclusion

Accordingly, State Farm's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted.  Defendants' motions to dismiss under Rule 12(b)(6) are denied.

The Clerk of the Court is respectfully directed to enter a judgment in this case, declaring that:

1. State Farm has no duty to defend Daniel in the action captioned *Margaret Ricciardi v. Daniel Ricciardi*, Index No. 512118/2024, filed on April 30, 2024 in the Supreme Court of the State of New York, County of Kings.

2. State Farm has no duty to indemnify Daniel in the action captioned *Margaret Ricciardi v. Daniel Ricciardi*, Index No. 512118/2024, filed on April 30, 2024 in the Supreme Court of the State of New York, County of

---

[10] The parties do not contest that the declination was "in such form as the superintendent determines."

19

      Kings.

3.      The Scahill Law Group may withdraw immediately as counsel to Daniel in the action captioned *Margaret Ricciardi v. Daniel Ricciardi*, Index No. 512118/2024, filed on April 30, 2024 in the Supreme Court of the State of New York, County of Kings.

The Clerk of the Court is further directed to terminate all pending deadlines and hearings in this action and to close the case.

Dated:    Brooklyn, New York          **SO ORDERED.**
           May 12, 2025

                                                          */s/ Joseph A. Marutollo*
                                                      JOSEPH A. MARUTOLLO
                                                      United States Magistrate Judge